JERRY WALKER, Plaintiff-Appellant, v. PHILLIP HARDIMAN, Director, Cook County Department of Corrections, Defendant-Appellee.

First District (5th Division)   No. 85—0310

Opinion filed January 31, 1986.

Maren J. Dougherty and Thomas A. Corfman, both of Genson & Steinback, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from the order denying his complaint for *habeas corpus* relief.[1] He contends that there was an unreasonable delay between the pronouncement and imposition of sentence which requires his release from custody.

---

[1]In conformity with section 10—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 10—101), throughout this opinion we refer to the person seeking *habeas corpus* relief as plaintiff where appropriate.

Following a bench trial, plaintiff was found guilty of armed robbery and burglary and was sentenced to serve concurrent, indeterminate terms of not less than six years nor more than 24 years for armed robbery and not less than two years nor more than six years for burglary. Plaintiff was sentenced on November 15, 1977, and, after filing a timely notice of appeal, he was released on bond pending appeal after serving only five weeks of his sentence. We affirmed his convictions on direct appeal in an opinion filed on September 28, 1979. (*People v. Walker* (1979), 77 Ill. App. 3d 227, 395 N.E.2d 1087.) His subsequent petition for leave to appeal was denied and our mandate, issued on February 21, 1980, was spread of record in the circuit court on March 11, 1980. Plaintiff's attorney was promptly notified that his convictions had been affirmed and that the mandate had been issued to the circuit court. Counsel was also notified that plaintiff's petition for leave to appeal had been denied.

In an affidavit submitted in support of plaintiff's complaint for *habeas corpus* relief, his appellate counsel, Jeffrey B. Steinback, averred that in February 1980 he had advised plaintiff that "his appeal had been denied by the Appellate Court and the Illinois Supreme Court" and that the Cook County State's Attorney's Office would notify him (or his attorney) of the date and time he was to surrender. Steinback averred further that it was the practice of the Cook County State's Attorney's office to notify persons whose convictions had been affirmed while they were free on bond of the date and time they were to surrender, and he advised plaintiff that he should expect to receive notification of when to surrender. Plaintiff periodically checked with Steinback's office to discover whether the State's Attorney's office had sent any notice of the day of surrender, but neither he [Steinback] nor plaintiff ever received such notice.

At the hearing on his complaint, plaintiff admitted that his attorney had informed him that he had lost his appeal and had told him that he would have to "turn [himself] in." Plaintiff, however, also testified that Steinback had told him that he would be notified when he was to surrender himself. Plaintiff never received notice to surrender and remained at liberty until he was taken into custody on October 28, 1984, which was four years and seven months after our mandate had been spread of record in the circuit court.

At the time of his arrest, plaintiff was employed as a wrecker at an automobile salvage yard and helped to support his mother, who, plaintiff stated, received $500 per month in unemployment compensation benefits. The vice-president of the salvage yard testified that plaintiff was employed by her for more than five years and was a val-

ued employee who worked eight hours a day, six days per week. Following his convictions for armed robbery and burglary in 1977, plaintiff was not arrested for any other offenses. While plaintiff had moved at least five times since the date he was released on an appeal bond late in 1977 and gave no notice of his changes of address, it does not appear that his failure to do so had any significance as no effort was made to bring him into custody. Plaintiff explained that he did not surrender himself because his mother was constantly ill but stated that he would have turned himself in had he been notified to do so.

At the January 1985 hearing on plaintiff's complaint for *habeas corpus* relief, his mother testified that she had heart problems and had not worked since she was laid off in 1980. She had received severance pay from her last employer which she expected to deplete sometime during the summer of 1985. She did not receive unemployment compensation benefits and she stated that prior to his arrest, plaintiff helped to support her. She is a widow with three other children, none of whom is able to contribute to her support. At the time of the hearing, she was seeking review of a denial of her application for a disability pension. Counsel also introduced a psychological evaluation showing that plaintiff has a very low intelligence quotient.

At the conclusion of the hearing, the court denied plaintiff's complaint for *habeas corpus* relief and this appeal followed.

OPINION

■ Plaintiff contends that there was an unreasonable delay between the pronouncement and imposition of sentence which requires his release from custody. Section 10—124(2) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 10—124(2)) provides that a prisoner in custody by virtue of process from any court legally constituted may be discharged "[w]here, though the original imprisonment was lawful, nevertheless, by some act, omission or event which has subsequently taken place, the party has become entitled to be discharged." An unreasonable delay between the pronouncement and imposition of sentence may be a circumstance warranting the release of the plaintiff on *habeas corpus*. (*People ex rel. Millet v. Woods* (1973), 55 Ill. 2d 1, 302 N.E.2d 32; *People ex rel. Rudin v. Ruddell* (1970), 46 Ill. 2d 248, 263 N.E.2d 48.) A determination as to the reasonableness of a delay and the adequacy of its explanation must rest upon examination of the circumstances of each case. *People ex rel. Millet v. Woods* (1973), 55 Ill. 2d 1, 302 N.E.2d 32.

In *Millet*, the petitioner, after he was convicted and sentenced,

was released on bond pending disposition of his appeal. The appellate court affirmed the conviction and the supreme court denied his petition for leave to appeal and issued its mandate to the appellate court. Almost five years then elapsed, however, before the appellate court's mandate was spread of record in the circuit court and proceedings were undertaken by the State to cause the petitioner to commence service of his sentence. During that five-year period, the petitioner led a law-abiding and productive life. The supreme court found that there was no reasonable explanation for the delay in filing the appellate court's mandate and that there was a lack of diligence on the part of the State. The court rejected the State's contention that the petitioner was independently obliged by the terms of his bond to surrender himself upon the denial of his petition for leave to appeal. This contention, the court stated, ignored the established practice in Cook County at that time, pursuant to which the State requested issuance of the appellate court mandate and moved that it be spread of record in the circuit court. Until this process was completed, the petitioner could not fairly be charged with delay. The supreme court concluded that his incarceration at that late date would serve neither the principles of justice nor his rehabilitation and affirmed the judgment discharging him.

In the case at bar, our mandate was promptly spread of record in the circuit court on March 11, 1980. Nevertheless, plaintiff was not taken into custody until October 28, 1984, which was more than 4½ years later.[2] The State has offered no explanation for its failure to adhere to its established practice by notifying plaintiff or his attorney of the date on which he was to surrender. It is undisputed that during this period of time, plaintiff "led a law-abiding and productive life" (*People ex rel. Millet v. Woods* (1973), 55 Ill. 2d 1, 5, 302 N.E.2d 32, 34), and helped to support his mother. While the State suggests that plaintiff had an independent obligation to surrender himself under the terms of his appeal bond once he was advised that his convictions had been affirmed (Ill. Rev. Stat. 1977, ch. 38, par. 110—10(b)(5)), and that he could not rely upon "a gratuitous administrative practice" of the State's Attorney's office to notify him of the date on which he was to

---

[2]It is immaterial that the delay in this case occurred after our mandate was filed in the circuit court. See *People v. Ripa* (1983), 115 Ill. App. 3d 1, 449 N.E.2d 977, where the court held that an unexplained 18-month delay between the filing of the appellate court mandate in the circuit court and plaintiff's receipt of a letter telling him that he had to surrender himself was unreasonable and warranted his discharge on *habeas corpus*, particularly in light of the "substantial changes in his life and life style." 115 Ill. App. 3d 1, 3, 449 N.E.2d 977, 978.

surrender (*People ex rel. Rogers v. Elrod* (1975), 35 Ill. App. 3d 26, 28, 340 N.E.2d 598, 600), our supreme court's opinion in *People ex rel. Millet v. Woods* (1973), 55 Ill. 2d 1, 302 N.E.2d 32, indicates otherwise.[3] Here, as in *People v. Ripa* (1983), 115 Ill. App. 3d 1, 449 N.E.2d 977, "[t]he evidence is that [plaintiff] was prepared to [surrender] on learning [that] his appeal was denied, but on the advice of his attorney waited to be notified by the State, apparently in conformance with a local practice." (115 Ill. App. 3d 1, 5, 449 N.E.2d 977, 978.) These facts serve to distinguish *People v. Bartlett* (1984), 123 Ill. App. 3d 172, 462 N.E.2d 956, also cited by the State.

■ Although the facts differ from those in *People ex rel. Millet v. Woods* (1973), 55 Ill. 2d 1, 302 N.E.2d 32, we believe that under the circumstances here plaintiff's imprisonment at this time would not serve either the principles of justice or his rehabilitation. We reach this conclusion because (a) the State, as in *Millet*, offers no explanation for the long delay during which it appears that no effort was made to take plaintiff into custody; (b) the State did not notify plaintiff in accordance with its established practice of a date and time to surrender and it is clear that plaintiff's counsel informed defendant that the State would so notify him; and (c) that plaintiff led a law-abiding and productive life during the period of delay.

Accordingly, we reverse the order appealed from and remand with directions to grant *habeas corpus* relief and to discharge plaintiff from custody.

Reversed and remanded with directions.

PINCHAM and LORENZ, JJ., concur.

---

[3]We note in this regard that the principal authority on which the State relies, *People ex rel. Rogers v. Elrod* (1975), 35 Ill. App. 3d 26, 340 N.E.2d 598, did not cite or discuss the supreme court's opinion in *Millet*.