THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD BARTLETT, Defendant-Appellant.

Second District   No. 83—96

Opinion filed April 11, 1984.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE VAN DEUSEN delivered the opinion of the court:

Defendant, Richard Bartlett, appeals from an order of the circuit court of Du Page County denying his petition for *habeas corpus* relief brought under the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 10—124(2)).

On June 1, 1979, defendant was convicted of the offense of armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—2(a)) and on August 7, 1979, was sentenced to incarceration with the Department of Corrections for a term of four years to four years and one day. Notice of appeal was filed August 21, 1979, and defendant's conviction and sentence were affirmed by this court on December 12, 1980 (*People v. Bartlett* (1980), 91 Ill. App. 3d 138). Defendant's petition for leave to appeal was denied by the Illinois Supreme Court on March 30, 1981 (83 Ill. 2d 571), and the supreme court issued its mandate to this court on April 23, 1981. Our mandate was issued April 29, 1981, and filed in Du Page County on May 1, 1981.

Defendant thereafter remained free on his appeal bond, and on July 15, 1982, the State's Attorney moved to remand the defendant for commencement of sentence pursuant to our mandate. Defendant appeared that day, the mittimus was stayed, and the matter was continued. On August 12, 1982, defendant filed a petition for *habeas corpus* relief. In his petition, he did not challenge the validity of his conviction and sentence, but he alleged that, after the mandate issued, he received no communication from the court or the State's Attorney's office relative to surrendering himself and received such notice only after he went to the county clerk's office in June 1982 and informed them that he did not actually serve four years in the penitentiary as their records apparently showed. During that time, he stated, there had been substantial changes in his life, which he set forth, and to re-

quire him to return to the penitentiary 15 months after the issuance of the mandate would result in a substantial denial of his constitutional rights of due process of law.

The State filed a motion to deny the petition on the basis that there had been no substantial changes in his life so as to entitle him to discharge. The State maintained that to allow the defendant to go free without serving his sentence would be to reward him for an oversight which occurred because he had been granted the privilege of being released on appeal bond. A hearing was held on November 23, 1982.

At the hearing, no testimony was taken but both sides agreed as to the facts presented by the defense, which basically expanded on the allegations of the petition. However, the defense added the new and significant facts that, after the mandate issued, the defendant was aware it had issued and that he had lost his appeal, but his attorney told him that he was going to "take it up further," and defendant was never aware that he should surrender himself. The trial judge found that, under the circumstances, jurisdiction to enforce the sentence properly imposed was intact, and the *habeas corpus* petition was denied.

On appeal, defendant argues that the State's 14-month delay, following the circuit court's receipt of this court's mandate, in notifying him to surrender himself from bail pending appeal, during which time he lived a law-abiding and productive life, entitled him to be discharged from custody. He relies in the main on *People ex rel. Millet v. Woods* (1973), 55 Ill. 2d 1, and *People v. Ripa* (1983), 115 Ill. App. 3d 1. We find this case to be distinguishable from *Millet* and *Ripa* and affirm the trial court order denying defendant's petition for *habeas corpus* relief.

We agree with the conclusion in *Ripa* that the standards set forth in *Millet* are dispositive: the reasonableness of a delay and adequacy of its explanation must rest upon examination of the circumstances of each case (*People ex rel. Millet v. Woods* (1973), 55 Ill. 2d 1, 4). In *Millet*, the unexplained passage of time of almost five years between the filing of the supreme court mandate in the appellate court and the filing of the appellate court mandate in the circuit court was an extraordinary circumstance requiring careful scrutiny. The State had the responsibility to move that the appellate court mandate be spread of record in the circuit court and was less than diligent in that regard. Until that was done, defendant could not fairly be charged with delay.

In the case at bar, though, the appellate court mandate was promptly filed in the circuit court, and defendant was aware that it

had issued and that he had lost his appeal. Further, the delay here was approximately 14 months compared to five years in *Millet*. This case is, therefore, more similar to *Ripa*, where the appellate court mandate was promptly filed but 18½ months elapsed thereafter before the defendant was ordered to surrender himself and complete service of sentence.

In *Ripa*, the trial court heard testimony from the defendant that, when his drug convictions were affirmed, he was so informed by his attorney, who also told him that he would receive a letter advising when to surrender to complete his sentence; that he had worked for the same employer for five years and lived at the same address for two years; that he had married and his wife was pregnant and employed; that they depended on their employment for income; and that he had not been arrested nor in any trouble since the 1976 charges for which he was sentenced. His wife testified that her father and sister had died, that she and her mother required psychological treatment as a result thereof, that defendant was very supportive and took her mother into their home and handled family affairs, and that it would be difficult after losing her father and sister to also lose her husband. Her mother's testimony essentially corroborated hers, and defendant's employer testified that defendant was at that time one of their finest employees and that he had changed his life style and was no longer involved with drugs or his prior associates.

The facts here were that defendant's grandfather died, and the family consisting of his mother, two sisters and their children had to move out of the grandfather's house and into an apartment; that his mother, who was ill when he was sentenced, was diagnosed to have cancer; that defendant had had several different jobs but was employed on a regular basis; and that his income went to support his family. However, as defendant himself admits in his reply brief, his life style did not change as drastically as Ripa's. Defendant's assertion that his family relies on him for psychological and economic support, while in all probability accurate, is not as compelling a factor in the situation here as it was in *Ripa*.

As the trial judge observed, defendant's petition does not state that he was not advised by his former attorney that the appeal had been lost and the sentence was due to be served. In fact, he was aware of it but was told by his attorney that he would "take it up further." This statement does not equate with the statements by Ripa's attorney that he would receive a letter advising him when to surrender. Moreover, such notification was apparently shown to be a local practice in *Ripa* (*People v. Ripa* (1983), 115 Ill. App. 3d 1, 5), and the

record here does not establish such a practice. We also note and consider that one of the statutory conditions of the defendant's bail, while he appealed his conviction and sentence, was that if the judgment was affirmed, he would forthwith surrender to the officer from whose custody he was bailed. Ill. Rev. Stat. 1981, ch. 38, par. 110—10(c)(5).

An examination of the circumstances of this case, as required by *Millet* in such cases, supports the trial court's determination that defendant was not entitled to discharge, and we conclude that the trial court properly denied the *habeas corpus* petition. See *People v. Cheek* (1982), 93 Ill. 2d 82, 93-94.

Affirmed.

LINDBERG and HOPF, JJ., concur.