THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. EFRAIN SANTOS, Petitioner-Appellant.

First District (1st Division)   No. 85—0076

Opinion filed August 11, 1986.

Marc S. Levin, of Chicago (Stewart Stoller, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter D. Fischer, and Jane Miller, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Efrain Santos, appeals from an order of the circuit court of Cook County denying his petition for *habeas corpus* relief brought pursuant to section 10—124 of the Code of Civil Procedure.[1] (Ill. Rev. Stat. 1985, ch. 110, par. 10—124.) Plaintiff contends that the unreasonable and unexplained delay of more than 3½ years between pronouncement and imposition of sentence warrants his release from custody. For the following reasons, we affirm the judgment of the circuit court.

_____

[1]Pursuant to section 10—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 10—101), we shall refer to Efrain Santos as "plaintiff" throughout this opinion.

On August 23, 1979, plaintiff was convicted of possession of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1100 *et seq.*) and was sentenced on September 28, 1979, to seven years in the Illinois Department of Corrections. On that same date, plaintiff filed his notice of appeal and was released on appeal bond. Thereafter, on April 9, 1981, plaintiff's conviction and sentence were affirmed by this court. Notice was spread of record in the circuit court on April 22, 1981, and a warrant was issued for plaintiff's arrest. However, plaintiff remained free on bond until he was arrested in Will County on December 10, 1984, after presenting his driver's license to a police officer in order to prevent the car in which he was a passenger from being towed to headquarters because the driver had an invalid license. On December 18, 1984, plaintiff filed a petition for *habeas corpus* relief.

At the hearing on his petition, plaintiff testified that the attorneys who had represented him during the underlying criminal proceedings had informed him at the time of his release on bond that the appeal could take from one to five years and that they would notify him as to when they would be going back to court. Plaintiff denied ever having received a letter as to the status of the proceedings from his attorney, the State's Attorney's office, or the court clerk's office.

Plaintiff further stated that at the time of his arrest on the drug charges, he resided on Kedvale Avenue in Chicago, which was the address of record. Shortly after his release on bond, plaintiff moved from the Kedvale address to 25th Street, and then from 25th Street to Trumbull. He resided at both of these addresses at various times and received mail at both until his arrest in December 1984. It is unclear from the record whether plaintiff had notified his attorneys of his move from the Kedvale address. At one point in his testimony, plaintiff stated that he had informed them. However, at another point, he stated that he "assumed" that his attorneys knew where to contact him. The record is void of any evidence that plaintiff had notified either the court or the State of his change of address.

At the conclusion of plaintiff's case, the State introduced into evidence the notice of forfeiture of bail bond, dated April 22, 1981, addressed to plaintiff at the Kedvale address. Subsequently, the trial court found that the delay in executing the warrant did not prejudice defendant and denied the *habeas corpus* petition. Plaintiff's appeal followed.

■■ On appeal, plaintiff argues that the State's unexplained 3½-year delay in the execution of his sentence, during which time he led a productive, law-abiding life, entitles him to be discharged from cus-

tody. In support of his position, plaintiff relies on *People ex rel. Powers v. Shattuck* (1916), 274 Ill. 491, 113 N.E. 921, and its progeny: *People ex rel. Rudin v. Ruddell* (1970), 46 Ill. 2d 248, 263 N.E.2d 48; *People ex rel. Millet v. Woods* (1973), 55 Ill. 2d 1, 302 N.E.2d 32; and *People v. Ripa* (1983), 115 Ill. App. 3d 1, 449 N.E.2d 977. We concur with the general principle expressed in the *Shattuck* line of cases that the reasonableness of a delay and the adequacy of its explanation must rest upon the circumstances of each case. However, we find the present case factually distinguishable from the *Shattuck* line and, thus, do not find the holdings persuasive.

In *Shattuck*, defendant was convicted in November 1909 of selling liquor in an antisaloon territory and ordered to pay a fine as well as to serve a jail sentence. Defendant moved to vacate and set aside that portion of the order which imposed a jail sentence. The court continued the hearing on the motion to December 13, 1909. However, court proceedings did not continue until December 20, 1915, at which time defendant moved to discharge the November 1909 order because of the delay. The court denied defendant's motion to discharge and ordered defendant confined in the county jail. On appeal, the reviewing court found that the trial court's unreasonable and unexplained delay in ruling on the motion deprived the court of jurisdiction and granted defendant's petition for *habeas corpus* relief.

In *Rudin*, a delay in judicial process of more than three years between conviction and issuance of an arrest warrant deprived the court of jurisdiction to order confinement. Similarly, in *Millet*, an unexplained delay of nearly five years between the filing of the supreme court mandate in the appellate court and the filing of the appellate court mandate in the circuit court deprived the court of jurisdiction to enforce the judgment.

■ In our view, the pivotal difference between the execution of judgment delays in *Shattuck, Rudin* and *Millet* and the delay in the present case is the precipitating event. In each of the cases discussed, the delay was directly attributable to the judiciary, not to the party seeking *habeas corpus* relief. In *Shattuck*, the court delayed in ruling on a motion; in *Rudin*, the arrest warrant was not timely issued; and in *Millet*, the mandate was not promptly spread of record in the circuit court. By comparison, in the present case, the appellate court mandate had been spread of record in the circuit court and notice of forfeiture of bond had been timely sent to plaintiff at his address of record. However, plaintiff no longer resided at the address of record and had apparently failed to notify the court. Plaintiff argues that throughout the period during which he was released on bond, he lived

and worked within the vicinity of the Kedvale address and that if the State had even attempted to look for him, it could easily have found him.

In our opinion, whether plaintiff was readily available at other nearby locations is irrelevant. The important facts are that he was not available at the address of record and there is no evidence that he made any attempt to notify the court or the State of his change of address. Contrary to plaintiff's argument, the State has no affirmative duty to conduct a quasi-investigation to locate a person released on appeal bond. Instead, we find that the party released on bond has an obligation to inform the appropriate authorities of any change of address. Moreover, section 110—10(c)(5) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 110—10(c)(5)), implies a duty upon the party released to remain apprised of the status of his appeal:

> "If the judgment is affirmed or the cause reversed and remanded for a new trial, [the defendant shall] forthwith surrender to the officer from whose custody he was bailed."

It is axiomatic that plaintiff cannot rely on lack of communication of the status of the proceedings to thwart enforcement of a judgment entered against him by a court of law when he is directly responsible for the communication failure. As stated by the trial court, "It would seem to me to be a vexatious rule to allow persons the right to appeal bond and then not put some responsibility on them or their attorneys once the appeal is over."

In addition, we also find *People v. Ripa* (1983), 115 Ill. App. 3d 1, 449 N.E.2d 977, relied upon by plaintiff, unpersuasive. In *Ripa*, defendant was convicted of offenses under the Cannabis Act and released on appeal bond in August 1978. The appellate court affirmed the drug convictions, and mandate was spread of record in the circuit court on July 9, 1980. Defendant's attorney informed him of the appeal outcome and told him not to surrender until he received a letter from the court. Defendant never received the letter. Finally, on January 27, 1982, the State moved for an order directing defendant to surrender. The trial court granted the motion and directed defendant to appear on February 10, 1982. Defendant appeared and subsequently filed a petition for *habeas corpus* relief. At the hearing on his petition, defendant testified that he had worked for the same employer for five years, lived at the same address for two years, had married and his wife was pregnant, and had not been arrested or in any trouble since the 1976 charges. The trial court granted the relief requested and the appellate court affirmed. In reaching its decision,

the reviewing court noted, *inter alia*, that: (1) the State had never asserted that defendant had an independent obligation to surrender himself under the terms of his appeal bond; (2) defendant's attorney advised him to wait until he received a letter from the State; and (3) notification by the State was apparently local practice.

■ In the present case, the State argued that plaintiff has a duty to surrender pursuant to section 110—10(c)(5) of the Code of Criminal Procedure of 1963. As previously discussed, we agree. Further, plaintiff did not rely to his detriment on advice by counsel to wait for a letter from the State before surrendering. Plaintiff's counsel merely told him that they would inform him as to when they were to go to court on the appeal. There is no evidence as to whether plaintiff knew when the appellate argument was heard. Finally, we concur with the trial court that the evidence has failed to establish any prejudice to plaintiff as a result of the delay. At the time he was released, plaintiff's attorneys informed him that an appeal could take from one to five years. Thus, not only was plaintiff on notice to periodically check the status of the appeal during that time period, he knew execution of the judgment could be delayed for as long as five years.

Accordingly, we find that under the circumstances of this case, the circuit court of Cook County properly denied plaintiff's petition for *habeas corpus* relief.

Affirmed.

QUINLAN, P.J., and O'CONNOR, J., concur.