(Nos. 63203, 63396 cons.—

JERRY WALKER, Appellee, v. PHILLIP HARDIMAN, Director, Cook County Department of Corrections, Appellant.—RONALD STOKES, Appellee, v. RICHARD J. ELROD, Sheriff, *et al.*, Appellants.

*Opinion filed April 16, 1987.—Rehearing denied June 5, 1987.*

GOLDENHERSH, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Joan S. Cherry, Peter D. Fischer, Jane H. Miller and Thomas V. Gainer, Jr., Assistant State's Attorneys, of counsel), for the People.

Edward M. Genson and Thomas A. Corfman, of Genson & Steinback, of Chicago, for appellee Jerry Walker.

Steven Clark, Deputy Defender, and Patricia Unsinn, Assistant Appellate Defender, of Chicago, for appellee Ronald Stokes.

CHIEF JUSTICE CLARK delivered the opinion of the court:

In these two consolidated cases, plaintiffs, Jerry Walker and Ronald Stokes, sought relief under our *habeas corpus* act (Ill. Rev. Stat. 1983, ch. 110, par. 10—101 *et seq.*) in the circuit court of Cook County and were denied relief. On appeal, the appellate court reversed. (*Walker v. Hardiman* (1986), 140 Ill. App. 3d 946; *Stokes v. Elrod* (1986), 143 Ill. App. 3d 1159.) The State has filed petitions for leave to appeal in this court pursuant to our Rule 315(a) (87 Ill. 2d R. 315(a)), and we have allowed its petitions.

In cause No. 63203, plaintiff Jerry Walker was convicted of armed robbery and burglary in October of 1977. He was sentenced to concurrent terms of 6 to 24 years for the armed robbery and 2 to 6 years for the burglary. Walker appealed his conviction and after serving five weeks of his sentence was released on bond

pending his appeal. On September 28, 1979, the appellate court affirmed his convictions. (*People v. Walker* (1979), 77 Ill. App. 3d 227.) The appellate court issued its mandate on February 21, 1980. On February 27, 1980, this court denied Walker's petition for leave to appeal, and on March 11, 1980, the appellate court mandate was spread of record in the circuit court. Walker's attorney was notified that Walker's convictions were affirmed and that the appellate court mandate was spread of record in the circuit court.

On October 27, 1984, Walker was arrested. On November 13, 1984, Walker filed a complaint for a writ of *habeas corpus* in the circuit court alleging: (1) that contrary to the established practice of the Cook County State's Attorney's office, Walker was not notified to surrender; (2) that since his conviction he has led a law-abiding and productive life; (3) that he has made no attempt to flee from the court's jurisdiction or hide from the authorities; (4) that imposition of sentence at this late date would impose an unfair hardship on him and destroy the successful rehabilitation he has achieved; and (5) that the unreasonable and unexplained delay between the issuance of the mandate and the present attempt to execute sentence deprives the court of jurisdiction.

Walker's counsel submitted an affidavit in support of the complaint and averred that at the time the appellate court issued its mandate it was the practice of the Cook County State's Attorney's office to notify defendants of a date and time to surrender if their convictions had been affirmed and the appellate court mandate was spread of record in the circuit court. Walker's counsel further stated in his affidavit that he advised Walker in April of 1980 that the State's Attorney's office would notify him (Walker) or counsel of the date and time he was to surrender. Neither Walker nor his attorney ever

received notice of a date and time when Walker should surrender.

Walker testified that although he moved several times during the time he was waiting to be notified, he periodically called his attorney's office to determine if he had received any notification.

Walker worked in an automobile salvage yard from the summer of 1979 until his arrest in October of 1984. He had remained at liberty for four years and seven months after the appellate court mandate was spread of record in the circuit court. Walker testified that his mother has not worked since 1980 when she was laid off from her job, that she suffers from a heart condition which restricts her activity, and that she supports herself by drawing from a lump-sum settlement she received from the railroad as severance pay, but relies as well on Walker's salary for her support. Mrs. Walker testified that her severance money would be depleted in June or July of 1985 and that she would only have her son's salary to rely on for support.

The vice-president of the salvage yard also testified on Walker's behalf at the hearing. She stated that Walker has been in her employ for more than five years and is a valued employee who works eight hours a day, six days a week. Walker's counsel also introduced into evidence a psychological evaluation showing that Walker has a very low intelligence quotient.

From October 27, 1984, the date of his arrest, until February 25, 1985, Walker was incarcerated. On January 24, 1985, his request for *habeas corpus* relief was denied. As we stated earlier, the appellate court reversed the denial of his *habeas corpus* relief on January 31, 1986 (*Walker v. Hardiman* (1986), 140 Ill. App. 3d 946), and the State filed a petition for leave to appeal in this court. The petition was allowed and the cause was consolidated with cause No. 63396.

In cause No. 63396, Ronald Stokes was convicted of armed violence and attempted murder in 1979 and sentenced to concurrent terms of six years. Stokes' trial attorney represented him during post-trial proceedings and filed a notice of appeal on November 19, 1979, but then withdrew as Stokes' counsel. The State Appellate Defender was appointed as Stokes' counsel on appeal. In September 1980 Stokes was released on an appeal bond. Stokes received an appeal bond slip which stated that if the judgment he appealed from was affirmed, he should "forthwith surrender to the officer from whose custody he was bailed." According to the record, Stokes' bond slip also contained a handwritten notation that his appearance before the Chief Judge of the Criminal Division was "to be notified," although there is nothing to indicate who wrote that notation on the bond slip.

The appellate court affirmed Stokes' conviction and sentence for armed violence and vacated his attempted-murder conviction. (*People v. Stokes* (1981), 95 Ill. App. 3d 62.) A petition for leave to appeal was filed and denied by this court on October 19, 1981. The mandate of this court did not issue to the appellate court until September 27, 1982, and the mandate of the appellate court issued to the circuit court on October 19, 1982.

There is evidence in the record that a notice was sent to Stokes' trial counsel and to the State's Attorney's office but not to the State Appellate Defender, who represented Stokes on appeal. Trial counsel testified that he was not certain he had ever received notice because he could not locate his file on the case and had no recollection of notifying Stokes or his appellate counsel of the notice. When Stokes' case appeared on the mandate call on November 1, 1982, an assistant State's Attorney erroneously informed the judge that Stokes was incarcerated and that a corrected mittimus should issue to reflect the

appellate court's judgment vacating Stokes' attempted-murder conviction.

Stokes was arrested on March 17, 1985, pursuant to an arrest warrant issued on February 6, 1985. On March 19, 1985, Stokes filed his complaint for a writ of *habeas corpus*. The State filed a motion to dismiss, arguing that notice to Stokes' trial counsel was notice to Stokes and that Stokes therefore had a duty to surrender upon issuance of the appellate court mandate.

Stokes testified at the hearing on the complaint that after his release on appeal bond he found a job and resided with his wife and two children, who are dependent upon him for support. Stokes testified that he was informed that his appeal had been denied by this court in 1981 and he contacted his attorney. His attorney told him to keep working until he would be notified when to surrender.

At the hearing, Stokes also presented letters attesting to the fact that he had been a productive member of society since his release on bond. His supervisor at work stated that he has had an excellent work record. The minister of his mother's church stated that Stokes was needed by his wife, mother and son and that Stokes was a "clean moral citizen." Stokes' neighbor wrote that Stokes was a good and respectable neighbor, and a Chicago police officer wrote of Stokes' voluntary participation in youth activities.

Although the circuit court acknowledged that Stokes had led a productive life and had been gainfully employed since his release, it denied Stokes' requested writ of *habeas corpus* on the ground that Stokes had a duty to surrender once he was notified that his appeal had been denied. The circuit court, on its own motion, after being informed Stokes would appeal the denial of his *habeas corpus* relief, allowed Stokes to be released on

the bond he had originally posted pending appeal of his conviction in the appellate court.

As stated previously, the appellate court, in a Rule 23 order, reversed the circuit court's denial of Stokes' requested writ of *habeas corpus*, holding that Stokes had no independent duty to surrender where the State did not, according to its usual practice, notify him of a surrender date, and where there was a handwritten notation on his bond slip informing him he would be so notified. (*Stokes v. Elrod* (1986), 143 Ill. App. 3d 1159.) There was nothing in the record to indicate who made the handwritten notation on the bond slip. The appellate court also found that no useful purpose would be served by Stokes' incarceration at this late date since Stokes had been leading a productive, law-abiding life since his release on bond.

The issue raised in these two cases is whether there has been an unreasonable delay between the pronouncement and imposition of sentence which warrants *habeas corpus* relief. Section 10—124(2) of the *habeas corpus* act states in pertinent part:

> "If it appears that the prisoner is in custody by virtue of process from any court legally constituted, he or she may be discharged only for one or more of the following causes:
>
> * * *
>
> 2. Where, though the original imprisonment was lawful, nevertheless, by some act, omission or event which has subsequently taken place, the party has become entitled to be discharged." Ill. Rev. Stat. 1985, ch. 110, par. 10—124(2).

The State maintains that any delay that was caused in these cases was attributable to Walker and Stokes because they failed to comply with their statutory duty to surrender and therefore the delay does not constitute an act, omission or event entitling them to discharge.

The basis for the State's argument regarding a duty on the part of defendants is section 110—10(c)(5) of the Code of Criminal Procedure of 1963, which states:

> "(c) If the defendant is admitted to bail after conviction the conditions of the bail bond shall be that he will, in addition to the conditions set forth in subsections (a) and (b) hereof:
>
> * * *
>
> (5) If the judgment is affirmed or the cause reversed and remanded for a new trial, *forthwith surrender to the officer from whose custody he was bailed.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 110—10(c)(5).

Walker and Stokes argue, without citation to authority, that the State has the duty to notify them when they must surrender and the failure of the State to allegedly follow its usual practice to do so is what caused the unreasonable delay entitling them to discharge.

The leading case in Illinois dealing with *habeas corpus* relief because of an unreasonable delay between the pronouncement and imposition of sentence is this court's decision in *People ex rel. Millet v. Woods* (1973), 55 Ill. 2d 1. In *Millet*, the petitioner, after being convicted and sentenced, was released on bond pending appeal. The appellate court affirmed his conviction for voluntary manslaughter and his sentence of 8 to 16 years' imprisonment. The appellate court also denied petitioner's motion for rehearing. Similarly, this court denied the petitioner's petition for leave to appeal and a later motion for reconsideration of the denial of the petition for leave to appeal. This court's mandate issued to the appellate court and was filed there on November 24, 1965. Almost five years later, on August 19, 1970, the appellate court's mandate was spread of record in the circuit court and the cause was continued until August 27, 1970. The petitioner failed to appear on August 27, and there was a

forfeiture of his bond. It was not determined whether timely notice of the August 27 hearing was ever received by petitioner, but the petitioner asserted that he voluntarily appeared in criminal court before surrendering to the sheriff on September 17, 1970. The next day, the petitioner sought *habeas corpus* relief in the circuit court. After a hearing, the circuit court issued a writ of *habeas corpus* and the petitioner was discharged from custody. The State appealed directly to this court.

It was established during the hearing on the petition for a writ of *habeas corpus* that the petitioner had led a law-abiding and productive life during the intervening years. This court found that there was no reasonable explanation for the five-year delay between the pronouncement of sentence and the appellate court mandate being spread of record in the circuit court. This court also found that the State had been less than diligent in the matter and that until the mandate had been spread of record, "the defendant may not fairly be charged with delay." (*People ex rel. Millet v. Woods* (1973), 55 Ill. 2d 1, 5.) This court held that petitioner's incarceration at such a late date would not serve the principles of fundamental justice or petitioner's rehabilitation and therefore affirmed the circuit court.

The State maintains that the instant cases are distinguishable from the *Millet* case because, unlike in *Millet*, in the instant cases there was no unreasonable delay between the pronouncement of sentence and the date when the appellate court mandate was spread of record. We agree. In *Walker* the appellate court mandate was spread of record within a month of the denial of the petition for leave to appeal, and in *Stokes*, less than 12 months passed between the denial of the petition for leave to appeal and the time when the appellate court mandate was spread of record in the circuit court.

Walker and Stokes, relying on *People v. Ripa* (1983), 115 Ill. App. 3d 1, contend that it is immaterial that the delay in the two instant cases occurred after the appellate court's mandates were spread of record in the circuit court. In *Ripa*, the defendant was convicted on February 14, 1978, and sentenced on June 15, 1978. In August of 1978, execution of his sentence was stayed and he was released on appeal bond. On July 9, 1980, the appellate court affirmed his convictions and the appellate court mandate was spread of record in the circuit court. On January 27, 1982, the State's Attorney filed a motion in the trial court requesting an order directing the defendant to surrender and commence service of his sentence. The trial court granted the motion, and the defendant was directed to appear on February 10, 1982. The defendant appeared on that date and subsequently filed a petition for *habeas corpus* relief alleging that there had been substantial changes in his life and that to require him to return to the penitentiary after the 18½-month delay between issuance of the mandate and the order to surrender was prejudicial and entitled him to discharge. At the hearing on the petition, defendant testified that when his conviction was affirmed he was so informed by his attorney. He was also informed by his attorney that he would receive a letter advising him when to surrender to complete his sentence. The letter was not received until January of 1982, when the State requested the order directing him to surrender. The appellate court, relying on *Millet*, held:

> "The factual similarities of the present case to *Millet* are striking, the only notable difference being in the length of the delay. The State has not offered any explanation for the 18½ month delay and has not sought to rebut the evidence [that] defendant has during that period changed his life style and become a responsible, law-abiding citizen. Nor does the State suggest defendant had an

independent obligation to surrender himself under the terms of his appeal bond. The evidence is that defendant was prepared to do so on learning his appeal was denied, but on the advice of his attorney waited to be notified by the State, apparently in conformance with a local practice. See *People ex rel. Millet v. Woods* (1973), 55 Ill. 2d 1, 4-5, 302 N.E.2d 32." 115 Ill. App. 3d 1, 5.

The State counters the argument of Walker and Stokes regarding the *Ripa* case by contending that this court should not follow the *Ripa* decision, an appellate court opinion from the second district. Instead, the State contends that this court should follow the holding in *People ex rel. Rogers v. Elrod* (1975), 35 Ill. App. 3d 26, a first district appellate court case wherein the appellate court held that notice to the petitioner's attorney that the appellate court mandate was spread of record in the circuit court was notice to petitioner and therefore "petitioner had an affirmative duty to surrender pursuant to the conditions of his bond and section 110—10(b)(5) of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, sec. 110—10(b)(5))." (35 Ill. App. 3d 26, 28.) Further, the *Rogers* court held that since petitioner knew of the affirmance of his conviction almost three years prior to receiving the letter from the State's Attorney's office, "he cannot now be heard to say that he relied upon a gratuitous administrative practice and, while waiting in expectation for notice, could ignore Illinois law and the provisions of the appeal bond upon which he was released." (35 Ill. App. 3d 26, 28.) The *Rogers* court therefore affirmed the decision of the trial court dismissing the petition for a writ of *habeas corpus*.

We believe that this court's decision in *Millet* is dispositive of the issue presented in this appeal because *Millet* makes it clear that once the appellate court mandate is spread of record in the circuit court any delay is attributable to the defendant, not the State.

In both cases herein the appellate court mandate was spread of record in the circuit court within a reasonable time after the denial of petitioners' petitions for leave to appeal, and Walker and Stokes were so notified. In *Walker*, within a month of the denial of the petition for leave to appeal in this court the appellate court mandate was spread of record in the circuit court and Walker's attorney was notified. In *Stokes*, the appellate court mandate was spread of record in the circuit court within one year after this court's denial of petitioner's petition for leave to appeal, and Stokes testified that he knew in 1981 that his appeal in this court had been denied. Under our holding in *Millet*, the delay after the State requested issuance of the appellate court mandate and moved that it be spread of record in the circuit court is chargeable to Walker and Stokes, not the State. We therefore believe that Walker and Stokes are not entitled to *habeas corpus* relief.

We do not believe this result is unduly harsh since section 110—10(c)(5) of the Code of Criminal Procedure of 1963 specifically states that a defendant admitted to bail *shall* forthwith surrender upon the affirmance of the judgment against him. A defendant who fails to comply with the conditions of the bail bond statute cannot now avoid service of his sentence by alleging that the State had a duty to notify. No statute requires the State to notify defendants when to surrender.

We believe an affirmative duty is properly placed on the defendant who has had the privilege of remaining free on bond while his appeal is pending. We also believe that our decision in this case will now make it clear that once the State moves to have the appellate court mandate spread of record in the circuit court, and the defendant is so notified, any delay in surrendering will be attributable to the defendant.

Accordingly, for all the reasons stated, the judgments of the appellate court are reversed and the judgments of the circuit court are affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.