THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. RONALD F. TONALDI, Petitioner-Appellant.

Second District    No. 3—97—0375

Opinion filed June 10, 1998.—Rehearing denied July 31, 1998.

Jeffrey B. Fawell, of Fawell, Fawell & Kavvadias, of Wheaton, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

In August 1992, petitioner, Ronald Tonaldi, was convicted of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(b)(2) (now 720 ILCS 570/401(c)(2) (West 1996))) and sentenced to seven years' incarceration. He was released on an appeal bond in August 1992. In October 1993 this court affirmed petitioner's conviction and sentence, and petitioner then petitioned for leave to appeal to the Illinois Supreme Court. The supreme court denied petitioner's petition and issued its mandate to this court in February 1994. On March 25, 1994, this court issued its mandate, which was filed in the trial court on March 28, 1994. Petitioner's attorney informed petitioner that he had lost his appeal and that the case had been sent back to the circuit court. On January 30, 1996, the State filed a motion requiring petitioner to appear and surrender.

Petitioner filed a petition for relief under the Habeas Corpus Act (735 ILCS 5/10—124(2) (West 1994)), asserting that, during the 22-month delay from the issuance of the appellate court's mandate until the State moved to "spread the mandate of record" before the trial court, substantial changes had occurred in his life. Therefore, requiring him to serve a prison sentence would result in a denial of his rights of due process of law. After an evidentiary hearing, the trial court denied the petition. This appeal ensued.

On appeal, petitioner contends that (1) the trial court erred in denying his *habeas corpus* petition and (2) alternatively, the trial court should have granted petitioner's motion for credit toward his sentence of imprisonment for the time that elapsed between the date the appellate court's mandate was filed with the circuit court clerk and the date on which the State filed its motion for petitioner to appear and surrender.

In his first contention petitioner argues that the trial court's denial of his petition for *habeas corpus* relief was erroneous, as a 22-month delay between the time of the filing of the appellate court's mandate in the circuit court and the State's motion for petitioner to appear and surrender on his appeal bond was unreasonable. Petitioner acknowledges that any delay that occurs once the appellate court mandate is spread of record in the circuit court is attributable to him, not the State (*Walker v. Hardiman*, 116 Ill. 2d 413, 423 (1987)), but maintains that the mandate is not spread of record until the State affirmatively

moves to place a defendant's case on the trial court's call. Thus, petitioner asserts, the 22-month delay that occurred in the present case was chargeable to the State and not to petitioner. Petitioner further asserts that because he experienced substantial character and life changes during the delay the trial court erred in ordering him to serve his prison sentence. To support his contention, petitioner relies on *People ex rel. Millet v. Woods*, 55 Ill. 2d 1 (1973), and *People v. Ripa*, 115 Ill. App. 3d 1 (1983). Both cases establish that the reasonableness of a delay and adequacy of its explanation must rest upon an examination of the circumstances of each case.

In *Millet*, our supreme court determined that the unexplained passage of five years between the filing of the supreme court's mandate in the appellate court and the filing of the appellate court's mandate in the circuit court constituted an "extraordinary circumstance." *Millet*, 55 Ill. 2d at 4. During that period of time, the defendant had led a law-abiding and productive life, which included the assumption of the obligations of custody and support for his two minor children following the death of his estranged wife. Also, at the time the supreme court issued its mandate (in 1965) to the appellate court, the established local practice in Cook County was for the State to request the issuance of the appellate court mandate and move that it be spread of record in the circuit court. 55 Ill. 2d at 5. Based on these factors, the court concluded that the defendant's incarceration at such a late date would serve neither the principles of fundamental justice nor the defendant's rehabilitation. The court affirmed the judgment releasing the defendant from custody pursuant to his petition for *habeas corpus* relief. 55 Ill. 2d at 5.

In the present case, unlike *Millet*, the appellate court mandate was promptly filed in the circuit court, and petitioner was aware that the mandate had issued and that he had lost his appeal.

In *Ripa*, the defendant's drug convictions were affirmed by this court, and the mandate was filed in the circuit court on July 9, 1980. *Ripa*, 115 Ill. App. 3d at 1. The defendant's attorney informed him of the appeal's outcome and told the defendant he would receive a letter advising him when to surrender to complete his sentence. The defendant never received the letter. On January 27, 1982, the State filed a motion in the trial court for an order directing the defendant to surrender in court to commence serving his sentence. 115 Ill. App. 3d at 2. The defendant filed a petition for *habeas corpus* relief, alleging that substantial changes had occurred in his life, that requiring him to serve his sentence after an 18$^{1}/_{2}$-month delay between the issuance of the mandate and the order to surrender was prejudicial, and that he was entitled to discharge. The trial court granted the relief requested, and this court affirmed.

Relying on *Millet*, we determined that the State had not offered any explanation for the 18½-month delay and had not sought to rebut the evidence the defendant had presented at the hearing on his petition that during the delay he had changed his lifestyle and become a responsible, law-abiding citizen. *Ripa*, 115 Ill. App. 3d at 5. The defendant's evidence had shown that he had worked for the same employer for five years and that the employer considered the defendant one of his finest employees; that the defendant had lived at the same address for two years; that he had married, and his wife was pregnant; that his wife's father and sister had died, resulting in psychological treatment for both the wife and her mother; that the defendant was very supportive, had taken the mother into his home, and had handled family matters; and that the defendant had not been arrested or in any trouble since the 1976 charges for which he was sentenced. We also noted that the State had not asserted that the defendant had an independent obligation to surrender himself under the terms of the appeal bond. We further noted that, on the advice of his attorney, the defendant had waited to be notified by the State to surrender and that such notification was apparently local practice.

As in *Ripa*, according to the affidavit of petitioner's attorney, it was apparently a local practice in the present case for a defendant to wait for notification by the State to surrender. Unlike *Ripa*, however, here the State did assert that petitioner had an independent obligation to surrender himself under the terms of his appeal bond. That obligation was specifically set forth on the appeal bond signed by petitioner. It stated:

> "In consideration of the said principal's release, the undersigned as principal and surety, respectively, covenant and agree:
> * * *
> ·2. That the said principal shall
> * * *
> F. If the judgment is affirmed or the cause reversed and remanded for a new trial, forthwith surrender to the officer from whose custody he/she was released."

In signing the appeal bond petitioner accepted this obligation.

Moreover, pursuant to statute, petitioner was obligated to surrender once the judgment against him was affirmed. As pointed out by our supreme court in *Walker v. Hardiman*, 116 Ill. 2d 413 (1987), and *Crump v. Lane*, 117 Ill. 2d 181 (1987), a defendant admitted to bail is required, pursuant to the conditions of bail set out in section 110—10(f)(5) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110—10(f)(5) (West 1994)), to surrender forthwith upon the affirmance of the judgment against him. He cannot avoid serving his

sentence by claiming that the State failed to notify him when he should surrender (*Crump*, 117 Ill. 2d at 185; *Walker*, 116 Ill. 2d at 424), as he has a duty to remain apprised of the status of his appeal (*People v. Santos*, 146 Ill. App. 3d 818, 822-23 (1986)).

In *Walker*, the supreme court considered the factual scenario presented in *Ripa* but rejected the contention that delay occurring after the mandate was "spread of record" in the circuit court could be regarded as having been caused by the State. The supreme court made clear that the distinguishing infirmity in *Millet* which led to the court's charging the State with the delay was the extraordinary circumstance that the mandate had not reached the circuit court, in part due to the State's lack of diligence in complying with a Cook County local practice of requesting the issuance of the appellate court mandate. Here, as we have already noted, the appellate court mandate was promptly filed in the circuit court.

■ Citing no authority for his position, petitioner now contends that the appellate court's mandate, although promptly filed in the circuit court with his knowledge, was legally impotent to trigger his statutory and contractual duty to surrender upon the affirmance of his conviction because the State failed to move affirmatively to spread the mandate of record. We disagree.

Supreme Court Rule 369(b) provides:

> "When the reviewing court dismisses the appeal or affirms the judgment and the mandate is filed in the circuit court, enforcement of the judgment may be had and other proceedings may be conducted *as if no appeal had been taken.*" (Emphasis added.) 134 Ill. 2d R. 369(b).

Considering that section 110—10(f)(5) of the Code specifically states that a defendant admitted to bail *shall* forthwith surrender upon the affirmance of the judgment against him, we reject petitioner's contention that he had no duty to respond until the State filed a motion to spread the mandate of record. We recognize that the phrase "spread of record" has been used by courts in varying contexts. For example, the supreme court in *Walker* observed that the appellate court's mandate in the *Ripa* case was "spread of record in the circuit court" on July 9, 1980. 116 Ill. 2d at 422. This court in *Ripa* reported only that the mandate was *filed* in the circuit court on that date. Arguably, the supreme court equated filing with spreading of record.

In any event, recognizing that local practices may vary somewhat in procedures following the affirmance of convictions, it is sufficient for our resolution of the present case to know that the mandate had been promptly filed in the circuit court and that petitioner had actual knowledge of the status of his case. Under these circumstances, con-

sistent with the reasoning in *Walker*, we conclude that petitioner's delay in surrendering cannot be attributed to inaction by the State. Although we agree with the statement in *Santos* that a defendant has a duty to remain apprised of the status of his appeal (146 Ill. App. 3d at 822-23), it is unnecessary here to address the effect of the filing of a mandate where the defendant may have been unaware of the status of his case.

Even if we were to conclude that the delay in the implementation of petitioner's sentence was not caused by his own omission, we would not find that the facts presented here warrant discharging the judgment under principles of due process. The present case is primarily distinguishable from *Ripa* because, unlike the defendant there, the petitioner here did not experience substantial changes in his character or lifestyle during the 22-month delay in question. At the hearing on his petition, petitioner testified that he was self-employed, as he always had been, managing some property he owned, although he said he had a promise of employment with Pepper Water Beds and at McCormick Place. Petitioner also testified that he had had no further arrests or trouble with the law since his arrest in March 1991.

Carol Musurlian, the woman with whom petitioner had lived for over 20 years, testified that "to her knowledge" petitioner had had no further arrests. According to Musurlian, she had never seen him use, handle, or be under the influence of drugs since his arrest. She admitted, however, that prior to petitioner's arrest, she also had never seen any drugs or drug paraphernalia in their home.

Petitioner's daughter, Christina LoBrillo, testified to the emotional and financial support petitioner had provided her and her daughter during LoBrillo's bout with cancer in 1995. LoBrillo admitted, however, that although petitioner was a tremendous help to her during her illness, his behavior toward her during her cancer was no different from that which he had displayed during her entire life. According to LoBrillo, petitioner always had taken good care of her, had given her money when she needed it, and had had a close relationship with her daughter.

LoBrillo testified that she had experienced no recurrence of her cancer since her 1995 surgery and radiation treatments. She presently worked between 30 and 35 hours per week and drove herself to work. The man she had lived with for 11 years worked full time as a concrete laborer. Her daughter attended kindergarten and then went to day care each day following kindergarten. This testimony established that LoBrillo no longer needed petitioner's financial or emotional support. The fact that her cancer might return someday was not a sufficient reason to release petitioner from serving his sentence. As the trier of

fact at a hearing on a petition for *habeas corpus* relief, the trial judge is in a position superior to the reviewing court to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof. *People v. Cheek*, 93 Ill. 2d 82, 94 (1982). Here, after hearing the testimony of petitioner's witnesses and then comparing the facts of the pertinent case law with the facts of the present case, the trial judge found that petitioner's situation did not "reach the extremes" of *Ripa* but was more similar to the defendant's situation in *People v. Bartlett*, 123 Ill. App. 3d 172 (1984).

In *Bartlett*, we determined that during the 14-month delay following the circuit court's receipt of this court's mandate, the defendant's lifestyle had not changed as substantially as had the defendant's in *Ripa*. In *Bartlett*, the facts showed that the defendant's grandfather died and that the family consisting of his mother, two sisters, and their children had to move out of the grandfather's house and into an apartment; that the defendant's mother, who was ill when the defendant was sentenced, was diagnosed with cancer; that the defendant had held several different jobs but was employed on a regular basis; and that his income went to support his family. The defendant was aware that the mandate had issued and that he had lost his appeal but was told by his attorney that he was going to "take it up further." 123 Ill. App. 3d at 175. We determined that this statement did not equate with the statement by Ripa's attorney that Ripa would receive a letter notifying him when he should surrender. Also, we noted in *Bartlett* that one of the statutory conditions of the defendant's bail, while he appealed his conviction and sentence, was that if the judgment was affirmed, he would forthwith surrender to the officer from whose custody he was bailed. 123 Ill. App. 3d at 176. We concluded that all these circumstances supported the trial court's determination that the defendant was not entitled to discharge.

As in *Bartlett*, an examination of the circumstances in the present case convinces us that the trial court properly denied petitioner's petition for *habeas corpus* relief. Petitioner failed to establish that he had substantially changed his character or lifestyle.

■ Petitioner next contends that the trial court should have granted his motion for credit for time spent at liberty during the 22-month delay. As the State points out, petitioner cites no Illinois authority that supports his contention. Rather, he relies on a federal case, *Kiendra v. Hadden*, 763 F.2d 69 (2d Cir. 1985). We note first that decisions of the United States Court of Appeals are not binding upon the state courts and are held to no more than persuasive authority. *People v. Qualls*, 233 Ill. App. 3d 394, 397 (1992). Given the particular facts

of *Kiendra*, however, we do not consider it as persuasive authority for petitioner's position.

In *Kiendra*, while incarcerated in the Rhode Island State penitentiary, the defendant was convicted in a federal court and sentenced to three years' imprisonment. The defendant's sentence was to commence when he was released from the sentence being served in the state penitentiary. At the expiration of his state sentence on September 16, 1981, federal marshals refused to take the defendant into custody.

Shortly thereafter, the defendant was arrested on an unrelated state charge and sentenced to a four-year prison term. Being aware of the federal detainer, the court ordered that the defendant serve his sentence in a federal penitentiary and that the sentence run concurrently with his three-year federal sentence. The state court notified the federal marshals, who again declined to take custody. As a result, the defendant was placed in a state penitentiary. Twice, while serving his sentence, the state court ordered the defendant's immediate transfer to federal custody. Each time, the marshals failed to implement the transfer. Not until the completion of the defendant's state sentence did the federal marshals take him into custody to begin serving the three-year federal sentence.

The *Kiendra* court determined that, even though the federal marshals failed to take custody, the defendant's federal sentence began to run on September 16, 1981, when he was released from the initial state sentence he had been serving. *Kiendra*, 763 F.2d at 73. The court's determination was based in part on prior federal case law holding that where a prisoner is discharged from a penal institution, without any contributing fault on his part or violations of the conditions of parole, his sentence continues to run while he is at liberty. 763 F.2d at 73.

However, as pointed out by the court, another factor strongly urged the result the court reached. That factor was that in sentencing the defendant to a four-year term on his second state conviction the state court intended that the four years should overlap the federal sentence, and it specifically ordered that the four-year sentence be served concurrently with the three-year federal sentence. 763 F.2d at 73. The state court did not contemplate that its four-year sentence would be served after the federal sentence. Also, the federal court contemplated that its sentence would follow immediately upon the first state sentence. The *Kiendra* court concluded that, by refusing to take the defendant into federal custody until after the completion of the second state sentence, the federal marshals not only transformed the state judge's concurrent sentence into a consecutive sentence but also disregarded the order of the federal court. 763 F.2d at 73.

The court modified the defendant's three-year sentence so that it commenced on September 16, 1981, the date he was originally released from his first state sentence and scheduled to be committed to the custody of the federal marshals. The court determined that, as modified, the defendant's sentence had already expired and therefore he should be released immediately from prison. 763 F.2d at 73.

We agree with the State that *Kiendra* provides no support for petitioner's petition, as it is both factually and legally dissimilar to the case before us.

In the present case, it was petitioner's request for an appeal bond that initiated his release from the mittimus during his appeal from his conviction and seven-year sentence. Petitioner's signature on the appeal bond evidenced his agreement, under the terms of the bond, to surrender forthwith upon the affirmance of the judgment against him. Petitioner testified at the hearing on his *habeas corpus* petition that he knew in February 1994 that his petition for leave to appeal to the supreme court had been denied and that he knew in April 1994 that his case had been returned to the trial court. Yet, upon the advice of his attorney as to "local practice," petitioner did not surrender himself but elected to wait for the State to notify him to surrender. Petitioner testified that, if the State had never notified him, he did not know how long he would have waited for notification. But, he stated, he had no plans to return to court (on his own). Under these circumstances, where it appears petitioner had no intention of surrendering on his own and, therefore, of fulfilling the obligation of his bail and the condition upon which he was released from jail, petitioner should not be afforded credit for the time he remained at liberty. He acquiesced in the delay of his return to court by not surrendering.

We note, parenthetically, that petitioner's presentence report indicates that he is no stranger to the criminal justice system, having previously been convicted of unlawful possession of a controlled substance, having been incarcerated on two occasions, and having taken several appeals both at the state and federal levels. The report also suggests that petitioner was familiar with the appeal bond process, as after his conviction and sentencing to the Department of Corrections (DOC) on the unlawful possession charge he was not "Received" at DOC to serve his sentence until more than two years later "following appeals."

The part of petitioner's penalty not served remained in full force and effect and could not be satisfied except by actual imprisonment or by act of some legal authority. *People ex rel. Kelly v. Ragen*, 392 Ill. 423, 427 (1946). Having been sentenced by a court having jurisdiction, petitioner could only be discharged from serving his sentence if the

sentence had been remitted in some manner provided by law. *People ex rel. Hesley v. Ragen*, 396 Ill. 554, 558 (1947). As the State points out, that manner was to seek a discharge pursuant to a petition for *habeas corpus* relief (735 ILCS 5/10—124(2) (West 1994)), and that request was properly denied as determined above.

Accordingly, we conclude the trial court's order denying petitioner credit against his sentence for time spent at liberty during the 22-month delay was proper.

For the reasons stated above, we affirm the judgment of the circuit court of Du Page County denying petitioner's petition for *habeas corpus* relief and his motion for credit against his sentence.

Affirmed.

COLWELL and RATHJE, JJ., concur.