2021 IL App (2d) 200501-U
No. 2-20-0501
Order filed August 12, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* COMMITMENT OF RAYMOND W. BABOCK | ) ) ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| | | No. 17-MR-1165 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Raymond W. Babcock, Respondent-Appellant). | ) ) ) ) | Honorable Brendan A. Maher, Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The evidence supported the jury's finding that defendant was a sexually dangerous person where (1) defendant had an extensive history of sexual offenses against children and also incidents of sexual misconduct in school and prison, and (2) the two experts who testified at trial agreed that defendant had pedophilic disorder and antisocial personality and that his risk to reoffend was well above average. Also, defendant was not denied due process when the jury deliberated 75 minutes before returning its verdict.

¶ 2    Respondent, Raymond W. Babcock, appeals from the judgment of the circuit court of Winnebago County finding him to be a sexually violent person under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2016). He contends that he was not proved guilty beyond a reasonable doubt and that the jury engaged in insufficient deliberations. Because

the only two experts to testify at trial agreed that respondent was a sexually violent person and the length of the jury's deliberation was justified by the overwhelming evidence, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Petitioner, the People of the State of Illinois (State) filed, under the Act, a petition alleging that respondent was a sexually violent person and seeking his commitment to the Department of Human Services (DHS).

¶ 5      The following evidence was presented at respondent's jury trial.  The State called Tetyana Kostyshyna, a licensed clinical psychologist and sex offender evaluator, who testified that she obtained her master's and doctoral degrees in clinical psychology from Argosy University in Chicago, an American Psychology Association accredited program.  According to Dr. Kostyshyna, she had previously obtained an undergraduate degree in psychology from the Ukrainian National University.  Although she received her undergraduate degree in 2004, she could not recall what year she started the undergraduate program or how many years it took her to finish.  Her curriculum vitae showed that her undergraduate degree was credentialed by Educational Credential Evaluators, Inc., of Milwaukee, Wisconsin.  Dr. Kostyshyna was employed by Wexford Health Sources, Inc., since 2017 as an evaluator of sexually violent and sexually dangerous persons.  In that role, she had performed 94 sex offender evaluations, 39 of which were performed in proceedings under the Act.  Of those 39 subjects, she had found 28 to qualify for commitment. Over defendant's objection, the trial court found that Dr. Kostyshyna was qualified as an expert.

¶ 6      According to Dr. Kostyshyna, she reviewed respondent's criminal history, the description of both his sexual and nonsexual offenses, police reports, victim statements, and his developmental history.  She also interviewed respondent.

¶ 7    According to Dr. Kostyshyna, respondent committed sex offenses against prepubescent children in 2004, 2008, and 2009.  For the 2009 offense, he was convicted and sentenced to the Department of Corrections for nine years. While in prison, respondent was cited for four separate incidents of sexual misconduct.  Respondent either exposed himself to, or masturbated in front of, female employees.

¶ 8    Using the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, DSM-5 (2013), Dr. Kostyshyna diagnosed respondent with four mental disorders.   Respondent has pedophilic disorder (sexual interest in prepubescent children), nonexclusive type, attracted to both sexes; exhibitionistic disorder (proclivity to expose his genitals to unsuspecting persons); antisocial personality disorder (marked by impulsivity, poor decision making, disrespect of boundaries, and exploitation of others); and cannabis use disorder (but respondent was currently in a controlled environment and unable to use cannabis).  When asked if respondent's mental disorders were "congenital or acquired conditions," she replied, "Yes, they all are."

¶ 9    Dr. Kostyshyna also assessed respondent for his risk to recidivate.  In doing so, she applied the Static-99 risk assessment scale.  On the Static-99, respondent was at the highest risk level.  She also applied the Static-2002R risk assessment.  On that scale, respondent was a category 5, the highest level of risk, and was at a 99% risk to reoffend.  Dr. Kostyshyna opined that respondent qualified as a sexually violent person who was at a substantial risk to reoffend.

¶ 10   Dr. Kimberly Weitl also testified for the State.   Dr. Weitl was a licensed clinical psychologist and sex offender evaluator.  She obtained her doctorate in clinical psychology from Argosy University.  She was employed by DHS.  She had performed over 300 sex offender evaluations and had been qualified about 600 times as an expert in the risk assessment of sex

offenders. With the agreement of respondent, the trial court found Dr. Weitl to be qualified as an expert.

¶ 11 Dr. Weitl reviewed respondent's DOC file, including Dr. Kostyshyna's evaluation, DHS records, and respondent's criminal history. She also interviewed respondent. According to Dr. Weitl, respondent had an extensive criminal history. In 2004, he anally penetrated an eight-year-old young boy. For two months in 2008, respondent fondled the breasts, buttocks, and vagina of a 10-year-old girl. In 2009, he was convicted of predatory criminal sexual assault for anally penetrating a five-year-old boy and was sentenced to nine years' imprisonment. His school records showed that he persistently sexually harassed female students, exposed himself to a teacher, and accessed pornography on the library computer. His mother and grandmother described him as unmanageable and said that no restrictions worked to curb his misbehavior. They also reported that he displayed abnormal sexual behavior, including advances toward his younger brother. He also lied and stole from both his mother and grandmother.

¶ 12 While in prison, respondent was cited for four instances of sexual misconduct. According to Dr. Weitl, respondent's sexual misconduct while incarcerated shows that his sexual behavior remains out of control.

¶ 13 Using the DSM-5, Dr. Weitl diagnosed respondent with pedophilic disorder and antisocial personality disorder. She opined that his disorders are either congenital or acquired conditions but are most likely both.

¶ 14 Dr. Weitl also assessed respondent's level of risk to reoffend. His score on the Static-99 indicated a well-above-average risk to reoffend. Dr. Weitl opined that respondent is at a substantial probability to reoffend and meets the criteria for a sexually violent person.

¶ 15    Respondent testified that he has no thoughts of having sex with children. He claimed that two different men sexually abused him when he was a child. He believed that, in some respects, that abuse contributed to his wrongful sex acts with children. He has had only one job, which lasted six months. He was in learning-disability and behavioral-disorder programs in school. He denied two alleged incidents in which he was accused of masturbating in front of a female correctional officer. As for the first incident, he said that he did not masturbate intentionally in front of the officer. As for the other incident, he testified that he was not masturbating but merely urinating. On cross-examination, he admitted to offending against eight- and five-year-old children. He also admitted exposing himself to female prison employees and that he knew that this was wrong.

¶ 16    Because of Covid-19 restrictions, the jury deliberated in the courtroom. A bailiff ordered food for the jury, and they deliberated from about 6:30 p.m. until 7:45 p.m. The jury found respondent to be a sexually violent person.

¶ 17    Respondent filed a motion for a new trial, in which he raised several issues related to the trial. He did not, however, raise any issue related to the jury deliberation. The trial court denied respondent's motion, and he filed this timely appeal.

¶ 18                                      II. ANALYSIS

¶ 19    On appeal, respondent contends that (1) the State failed to prove the allegations of the petition beyond a reasonable doubt, because the two experts contradicted each other and neither expert specified whether his mental disorders were congenital as opposed to acquired, and (2) the jury deliberations—lasting one hour and 15 minutes—violated his due process right to a fair trial because they were too brief for a trial involving complex expert testimony.

¶ 20    When reviewing a sufficiency-of-the-evidence claim following a jury determination that a respondent is a sexually violent person, we consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could find the elements proved beyond a reasonable doubt. *In re Commitment of Moody*, 2020 IL App (1st) 190565, ¶ 43 (citing *In re Commitment of Fields*, 2014 IL 115542, ¶ 20). Because the trier of fact is responsible for resolving conflicts in the evidence and determining the credibility of the witnesses and the weight to be given testimony, we may not substitute our judgment for that of the trier of fact and will not reverse its determination unless the evidence is so improbable or unsatisfactory that it leaves a reasonable doubt. *In re Commitment of Moody*, 2020 IL App (1st) 190565, ¶ 43.

¶ 21    To establish that a respondent is a sexually violent person under the Act, the State must prove beyond a reasonable doubt that (1) the respondent was convicted of a sexually violent offense, (2) the respondent has a mental disorder, and (3) the mental disorder creates a substantial probability that he will engage in acts of sexual violence. 725 ILCS 207/15(b)(1)(A), (b)(4), (b)(5) West 2016).

¶ 22    Respondent first contends that the State did not prove that he had a mental disorder, because the two experts differed in their opinions as to respondent's mental disorders. The Act defines a "mental disorder" as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." 725 ILCS 207/5(b) (West 2016). In determining whether the State has established the existence of a mental disorder under the Act, our appellate courts have routinely relied on expert testimony and deferred to the factfinder's determinations regarding an expert's credibility. See, *e.g.*, *In re Commitment of Moody*, 2020 IL App (1st) 190565, ¶ 48.

¶ 23    Although Dr. Kostyshyna testified that respondent suffered from four mental disorders and Dr. Weitl opined that he suffered from only two, they both agreed that he had pedophilic disorder and antisocial personality disorder. We disagree with respondent's characterization that there were "vast differences" between the two diagnoses. To the extent there were minor differences between the experts' opinions regarding respondent's mental disorders, that was a matter for the jury to weigh and resolve.

¶ 24    Respondent further asserts that, because neither expert specified whether respondent's mental disorders were congenital as opposed to acquired, their opinions are questionable. We disagree.

¶ 25    The State presented unrebutted testimony from two experts that respondent has a mental disorder as defined by the Act. Both diagnosed him with pedophilia and antisocial personality disorder, and they explained the bases for their diagnoses. Both pointed to respondent's extensive history of sex offenses against young children and his consistent inability to control his behavior. More importantly, each expert opined that respondent's mental disorders were attributable to either a congenital or acquired condition. Under the plain language of the Act, a condition qualifies as a mental disorder whether it is congenital *or* acquired. See 725 ILCS 207/5(b) (West 2016). Respondent does not cite, nor do we find, any authority requiring an expert to specify whether a respondent suffers from a congenital, as opposed to acquired, condition. Taking the expert testimony in the light most favorable to the State, we conclude that a rational trier of fact could find beyond a reasonable doubt that respondent suffers from either a congenital or acquired condition affecting his emotional or volitional capacity that predisposes him to engage in acts of sexual violence. See 725 ILCS 207/5(b) (West 2016). Respondent's contention to the contrary is

no more than a request for this court to reweigh the experts' testimony and credibility, a task we will not undertake. See *In re Commitment of Moody*, 2020 IL App (1st) 190565, ¶ 50.

¶ 26    Nor is there any merit to respondent's argument that Dr. Kostyshyna's opinion is questionable because she could not recall when she started her undergraduate education or how long it took for her to earn her undergraduate degree. Respondent also notes, apparently for the first time on appeal, that his online search "reveal[ed] a list of the existence of 129 universities in the nation of Ukraine," none of which is named "Ukrainian National University." Respondent's search during the pendency of this appeal is not conclusive as to which institutions existed in Ukraine in 2004 or earlier. In any event, such matters go to the credibility of the witness and are best assessed by the trier of fact. Further, notwithstanding her inability to recall the details of her undergraduate degree, Dr. Kostyshyna's curriculum vitae stated that her undergraduate degree was credentialed here in the United States. More importantly, she earned both her master's and doctoral degrees at an accredited school in Chicago. Because of her advanced degrees, any question about the legitimacy of her undergraduate degree had, at most, minimal impact on her credibility.

¶ 27    That leaves respondent's contention that he was denied a fair trial because the jury deliberated for only 75 minutes. We first note that respondent never raised this claim either at trial or in his motion for a new trial. Accordingly, he forfeited it. See *People v. McDonald*, 2016 IL 118882, ¶ 45. Nor has he asserted that it is reviewable as plain error. See *People v. Nieves*, 192 Ill. 2d 487, 502 (2000) (failure to argue plain error on appeal forfeits any plain-error argument); see also *In re Commitment of Curtner*, 2012 IL App (4th) 110820, ¶ 26 (applying criminal plain-error doctrine to sexually-violent-person case).

¶ 28    Forfeiture aside, there is no merit to respondent's claim that he was denied due process because the jury engaged in insufficient deliberations. A trial before a biased tribunal deprives a defendant of a substantial constitutional right and constitutes reversible error. *People v. Runge*, 234 Ill. 2d 68, 102 (2009). However, respondent does not point to, nor do we find, any Illinois case holding that a defendant was denied due process because of the length of the jury deliberations alone. Further, the length of any particular jury deliberation depends on the nature and amount of the evidence presented. *People v. Ramos*, 396 Ill. App. 3d 869, 881 (2009).

¶ 29    In this case, the State presented two expert witnesses who provided consistent opinions that respondent was a sexually violent person under the Act. Respondent offered only his bare denials that he had any current sexual interest in children or that he had committed certain sexual misconduct in prison. Certainly, considering the compelling evidence that respondent was a sexually violent person, the jury could have reached its verdict expeditiously. See *Ramos*, 396 Ill. App. 3d at 881. Absent some evidence of jury misconduct, apart from the amount of time they deliberated, defendant can only speculate that the jury did not properly consider the evidence.[1]

¶ 30    Finally, respondent's reliance on *United States v. Morgenstern*, 725 Fed. Appx. 546 (9th Cir. 2018) is misplaced. First, decisions of the United States Court of Appeals are not binding on this court. See *People v. Tonaldi*, 297 Ill. App. 3d 116, 122 (1998). Second, the court in *Morgenstern*, because of the overwhelming evidence of guilt, rejected the defendant's claim that

---

[1] We note that respondent states in his opening brief that the jury had to leave the courtroom and walk to another room to deliberate, which consumed some of the 75-minute period. That assertion misstates the record, however, as the jury remained in the courtroom to deliberate.

he was denied a fair trial because the jury engaged in insufficient deliberations. *Morgenstern*, 725 Fed. Appx. at 549. Thus, *Morgenstern* does not support respondent's position.

¶ 31                                  III. CONCLUSION

¶ 32    For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 33    Affirmed.